**CLARK, Appellant,**

v.

**CLARK, Appellee.**

[Cite as *Clark v. Clark*, 168 Ohio App.3d 547, 2006-Ohio-4820.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2005–T–0060.

Decided Sept. 15, 2006.

548

Robert M. Platt Jr., for appellant.

Anthony G. Rossi III, for appellee.

WILLIAM M. O'NEILL, Judge.

{¶ 1} Appellant, Norman Clark ("Clark"), appeals from the denial by the trial court to terminate his spousal support obligation. Clark sought to terminate spousal support to appellee, Alma Clark, on the ground that she was cohabiting with an unrelated male. Upon review, we reverse the judgment of the trial court.

{¶ 2} Clark and Alma Clark were married in 1963 and have three children. They were divorced by the Trumbull County Court of Common Pleas, Domestic Relations Division, in October 2004.

{¶ 3} Their divorce decree provided that Alma Clark would receive spousal support as per the court's prior order until she vacated the marital residence. The record shows that she vacated the marital residence in November 2004. Thereafter, Clark was ordered to pay her $2,500 per month up to and including June 2009, at which time the payments would be scaled down to lesser amounts. The spousal support payments were ordered for a total of 14 years, subject to termination "in the event of the death of either party or upon Wife's remarriage or cohabitation with a significant other."

{¶ 4} The trial court retained jurisdiction to modify the spousal support order for the 14-year period "pending a significant change in the financial circumstances of either party, including, but not limited to, retirement and/or entitlement to and receipt of social security benefits."

{¶ 5} Whether Alma Clark was cohabiting with a significant other was the question Clark presented to the trial court in his motion to terminate spousal support filed in March 2005.

{¶ 6} Clark's motion was heard by a magistrate. The magistrate's decision was entered on April 20, 2005, and found as follows:

{¶ 7} "[Alma Clark] has not remarried and she does not 'legally cohabitate' with her fiancé. [They] reside together only on most weekends from Friday evening thru Sunday afternoon. The rest of the time, [Alma Clark] and her fiancé reside several miles apart at entirely different residences. Most importantly, there was no evidence presented that they share living expenses."

{¶ 8} The fiancé was identified as Carl Dines.

{¶ 9} The magistrate recommended that Clark's motion to terminate spousal support be denied. The trial court entered a judgment entry approving the magistrate's decision and denying Clark's motion to terminate spousal support. The trial court's judgment entry was also dated April 20, 2005.

{¶ 10} Clark filed objections to the magistrate's decision on April 26, 2005. He contended in his objections that the evidence showed that Alma Clark and Dines did share living expenses.

{¶ 11} On May 3, 2005, the trial court overruled Clark's objections. Clark filed a timely notice of appeal to this court on May 18, 2005, raising the following assignment of error:

{¶ 12} "The trial court's adoption of the magistrate's decision to deny plaintiff-appellant's motion to terminate spousal support was against the manifest weight of the evidence, an abuse of discretion and prejudicial as the evidence established defendant-appellee was cohabiting with a significant other."

{¶ 13} We note preliminarily that the trial court entered two separate judgments in denying Clark's motion to terminate spousal support. In the first judgment entry, filed before Clark filed his objections, the trial court approved the magistrate's decision and denied Clark's motion to terminate spousal support. In the second judgment entry, the trial court overruled Clark's objections, ordered "[a]ll orders previously issued by the Magistrate to remain effective," and again denied Clark's motion to terminate spousal support. The notice of appeal filed in this court puts in issue the second judgment entry (May 3, 2005), which, except for overruling the objections, is essentially a restatement of the first judgment entry. For purposes of this review, we shall consider the two judgment entries as one, because Clark's notice of appeal was filed within 30 days of both entries and, except for overruling Clark's objections, the substance of the entries is the same.

{¶ 14} Our standard of review has two components. First, we review the trial court's finding that Alma Clark did not "legally cohabitate" with Dines pursuant to the manifest-weight standard of review.[1] That standard is that "[a] reviewing court will not reverse a trial court's decision as being against the manifest weight of the evidence if competent, credible evidence supports the trial court's judgment."[2]

{¶ 15} In addition, this court's standard of review for a decision denying a motion to terminate spousal support is abuse of discretion.[3] An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.[4]

---

1. *Barclay v. Barclay* (Dec. 11, 1997), 10th Dist. No. 97APF07–902, 1997 WL 770999.

2. *Geitz v. Geitz* (May 20, 1999), 4th Dist. No. 98 CA 833, 1999 WL 354517.

3. *McClain v. McClain* (Sept.30, 1999), 11th Dist. No. 98–P–0002, 1999 WL 960969.

4. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 16} "Cohabitation" has been construed by various appellate courts to mean more than living together for a significant period of time. As stated by the Fourth Appellate District:

{¶ 17} "[C]ohabitation implies that the former spouse and the paramour have lived together for a period of time and have assumed obligations, including financial support, traditionally associated with marriage. * * * [C]ohabitation suggests not only a relationship between two parties, sexual or otherwise, but also implies that some sort of monetary support exists between the former spouse and the paramour so as to constitute the 'functional equivalent of marriage.' " [5]

{¶ 18} The Supreme Court of Ohio has enumerated the elements of cohabitation:

{¶ 19} "[T]he essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium. * * * Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact."[6]

{¶ 20} "[B]efore a trial court may terminate a spousal support obligation pursuant to a cohabitation clause, the payor spouse generally must establish that: (1) the payee spouse is living with another male or female not his or her kin and (2) financial support exists between the two parties." [7]

{¶ 21} The underpinning for decisions terminating spousal support rests on the rationale for spousal support itself:

{¶ 22} "[Spousal support] is provided for the needed support of the ex-spouse and, if the ex-spouse is living with another person to the extent that the other person provides support or is supported, then the underlying need for [spousal support] is reduced or does not exist. Therefore, cohabitation, in the legal sense, implies that some sort of monetary support is being provided by the new partner or for the new partner. Without a showing of support, merely living together is insufficient to permit a termination of [spousal support]." [8]

---

5. *Geitz v. Geitz*, 4th Dist. No. 98 CA 833, 1999 WL 354517, at *4.

6. *State v. Williams* (1997), 79 Ohio St.3d 459, 465, 683 N.E.2d 1126.

7. *Geitz v. Geitz*, 4th Dist. No. 98 CA 833, 1999 WL 354517, at *4.

8. *Thomas v. Thomas* (1991), 76 Ohio App.3d 482, 485, 602 N.E.2d 385. See, also, *Day v. Day*, 2d Dist. No. 2002–CA–79, 2002-Ohio-6779, 2002 WL 31761480, at ¶ 4.

{¶ 23} Further, whether two parties are cohabiting is a question of fact for the trial court.[9]

{¶ 24} Alma Clark and Dines had known each other from family outings since the 1960s. They started dating in January 2004 and became engaged to be married in December 2004, approximately two months after Alma Clark's divorce.

{¶ 25} Dines and Alma Clark jointly own a private residence in Champion Township, Ohio, which they constructed in 2004. Dines bought the property in his name and then transferred it to their joint names after her divorce. In order to pay contractors during the construction phase, they also established a joint bank account with his funds. Dines worked and lived in the Columbus area during the week and would not be able to deal with contractors who needed to be paid during the week. Dines also bought a 1997 Mercedes automobile for Alma Clark in 2004.

{¶ 26} Dines testified that, except for one utility bill for the Champion Township residence that he paid in January 2005, Alma pays all the household expenses relating to that residence, including utility bills and groceries. He also testified that the one and only homeowner's insurance premium paid to date was paid from the joint bank account and that the furniture at the Champion Township residence was owned jointly, though the source of funds for purchase of the furniture was not stated.

{¶ 27} Alma Clark testified that she pays all the expenses of the residence where she lives, including utilities, groceries, and clothing, and that she and Dines do not share day-to-day living expenses.

{¶ 28} Clark argues that Alma Clark and Dines are living in a virtual state of marriage. We agree.

{¶ 29} While the issue of cohabitation is ordinarily a question of fact, "when reasonable minds can come to but one conclusion [the issue becomes] a question of law.  * * * '[I]t becomes a question of law, however, when "the facts are undisputed and no conflicting inferences are possible." ' " [10]  We hold that, as a matter of law, Dines and Alma Clark are cohabiting and sharing expenses.

{¶ 30} The evidence in the trial court is not in dispute. Dines built, paid for, and lives with Alma Clark in the home that he transferred to their joint names. Alma Clark moved into the jointly owned home shortly after her divorce was

9.  *Moell v. Moell* (1994), 98 Ohio App.3d 748, 752, 649 N.E.2d 880.  See, also, *Link v. Link* (Feb. 25, 2000), 11th Dist. No. 98–L–241, 2000 WL 234866.

10.  *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 330, 587 N.E.2d 825, quoting *Mary M. v. Los Angeles* (1991), 54 Cal.3d 202, 213, 285 Cal.Rptr. 99, 814 P.2d 1341, quoting *Perez v. Van Groningen & Sons, Inc.* (1986), 41 Cal.3d 962, 968, 227 Cal.Rptr. 106, 719 P.2d 676.

final. If the facts of this case were different and Dines were living at Alma Clark's house on weekends, this might not constitute sufficient evidence of cohabitation. In this case, however, upon his return from the Columbus area, Dines resides in *his own* home with Alma Clark.

{¶ 31} Alma Clark's only expenses are utilities, groceries, and her own clothing.

{¶ 32} Dines and Alma Clark have a joint checking account. Dines testified that his money was used to open the account. Money from this account was used to pay for the construction costs of their home. The homeowner's insurance premium was paid out of this account.

{¶ 33} Our analysis turns on the sharing of living expenses between Alma Clark and Dines. It is significant that Dines provided Alma Clark with a home and a car. These are "living expenses." Without any contribution except utility bills, Alma Clark lives in a jointly owned house that Dines paid for. Dines built the home, he furnished it, and he lives there. By providing a rent-free residence to her, as well as an automobile, he supports Alma Clark and her standard of living.

{¶ 34} The fact that Dines owns another residence is irrelevant. His situation is like that of a traveling salesman who returns home on weekends. Dines spends his workweek in Columbus, but on the weekends, he stays in the house he built, the house that he jointly owns with his fiancée, and the house that he intends to reside in when he retires.

{¶ 35} Moreover, Alma Clark is sharing expenses with Dines. The utility bills are shared in the sense that Dines enjoys the benefits of these payments when he lives there on the weekends. Alma Clark buys most of the groceries for the household. These are used by her during the week, and by her and Dines when Dines is there on weekends.

{¶ 36} In sum, Dines and Alma Clark's relationship is the "functional equivalent of marriage" that the cohabitation clause in the divorce decree implies and that is required before termination of spousal support is appropriate.[11] Dines and Alma Clark own a house together, they live in the house together, they have a joint bank account, and their furniture is jointly owned. The evidence is that but for the sharing of living expenses, Alma Clark could not enjoy the standard of living Dines has provided for her. Thus, it was unreasonable for the trial court to conclude that Dines is not sharing expenses with Alma Clark.

{¶ 37} The trial court based its decision on the arrangement that Dines and Alma Clark had established for themselves, whereby they ostensibly are bearing their own expenses. However, our analysis is that their arrangement constitutes

---

11. *Geitz v. Geitz,* 4th Dist. No. 98 CA 833, 1999 WL 354517, *4.

the sharing of expenses instead of paying their separate expenses and that this arrangement allows them to cohabit to their mutual financial benefit. Thus, the trial court abused its discretion in deciding as it did, given the reality of the living arrangement that Dines and Alma Clark have established for themselves.

{¶ 38} For the reasons stated, the trial court abused its discretion in denying Clark's motion to terminate spousal support.

{¶ 39} Clark's assignment of error has merit.

{¶ 40} The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

FORD, P.J., concurs.

RICE, J., dissents.

CYNTHIA WESCOTT RICE, Judge, dissenting.

{¶ 41} I believe that the majority has reached beyond our bounds pursuant to our standard of review. Instead of applying the applicable standard of review, the majority has substituted its judgment for that of the trial court. Therefore, I respectfully dissent.

{¶ 42} The majority correctly points out that a review for termination of spousal support as a result of cohabitation is a two-fold analysis. First, a finding of cohabitation or lack thereof is reviewed under a manifest-weight-of-the-evidence standard. "A reviewing court will not reverse a trial court's decision as being against the manifest weight of the evidence if competent, credible evidence supports the trial court's judgment." *Geitz v. Geitz* (May 20, 1999), 4th Dist. No. 98 CA 833, 1999 WL 354517, citing *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154; *Ross v. Ross* (1980), 64 Ohio St.2d 203, 204, 18 O.O.3d 414, 414 N.E.2d 426; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Pursuant to this standard, appellate courts are cautioned not to substitute their judgment for that of the trial court. *Geitz*, 98 CA 833, 1999 WL 354517, *3. The rationale for this deference is that the trial court, rather than a reviewing court, is in a better position to weigh witness credibility that may not translate to the pages of a transcript such as a witness's "demeanor, gestures and voice inflections." Id., quoting *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273.

{¶ 43} An appellate court then reviews the decision of the trial court to terminate or sustain alimony pursuant to an abuse-of-discretion standard. "Absent a showing that a trial court abused its discretion, a termination of sustenance

alimony payments in a modification proceeding should not be disturbed." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140, syllabus. Abuse of discretion implies that the trial court's decision was unreasonable, unconscionable, or arbitrary. Id. at 219, 5 OBR 481, 450 N.E.2d 1140. The majority has lost focus of this standard of review and instead substituted its own judgment for that of the trial court.

{¶ 44} "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.

{¶ 45} This court has previously held that "[w]hether a certain living arrangement should be classified as 'cohabitation' * * * is primarily a factual question to be determined by the trial court." *Farone v. Farone* (Sept. 15, 1995), 11th Dist. No. 94–L–058; see, also, *McClain v. McClain* (Sept. 30, 1999), 11th Dist. No. 98–P–0002, 1999 WL 960969.

{¶ 46} In the underlying case, Alma Clark resides in a home provided by her fiancé. However, Alma Clark supplies her own groceries, clothing, and day-to-day living expenses. Alma Clark resides primarily by herself in the home, with her fiancé maintaining a separate residence in Heath, Ohio and visiting Alma only for a portion of the weekends. Based on this, there was some competent, credible evidence that supports the trial court's conclusion against a finding of cohabitation. Clearly, this is not the only conclusion that could be made. One could just as easily interpret the evidence and infer that Alma Clark and her fiancé were cohabiting. However, when the trial court interprets the evidence in a manner that is at least plausible, it cannot be deemed to have abused its discretion. *Farone*, 11th Dist. No. 94–L–058.

{¶ 47} Although the majority defends its opinion by transforming the question of cohabitation, ordinarily a question of fact, into a question of law, the evidence is not so clear-cut to support that position. Only when no other inferences are reasonably possible can the reviewing court transform a question of fact into a question of law. Here, there are many conflicting suppositions that could be made from the evidence presented at the trial court level. One such conclusion is that Alma Clark and her fiancé are cohabitating. Another conclusion that can be reasonably inferred is that they are not.

{¶ 48} It is not enough for this court to reverse the trial court's decision simply because the majority disagrees with its determination. The trial court is in the best position to consider the evidence presented and assign appropriate credibility. The majority has failed to abide by the standard of review and has instead

substituted its judgment for that of the trial court. Under an abuse-of-discretion standard of review, it is not the reviewing court's duty to second guess the trial court. Rather, it is our duty to determine whether the court's decision was unreasonable. In light of the evidence contained within the record that could support the trial court's interpretation and ultimate decision, I would find no abuse of discretion and affirm the decision of the trial court.